Wolsey v. Neeley.

## Charles S. Wolsey and Charles H. Bunker v. Charles H. Neeley.

1.  GAMBLING CONTRACTS—*Options to Sell Stock.*—A contract giving to another the option to sell the stock of an incorporated company at a future time is a gambling contract and void under section 130 of division 1 of the Criminal Code.

2.  SAME—*Containing Valid Provisions.*—Where a contract, void under the criminal code, contains other provisions which are not, and which are valid, such provisions may be enforced.

Assumpsit, upon a contract in writing. Error to the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1895. Reversed in part and affirmed in part. Opinion filed January 22, 1896.

M. B. & F. S. LOOMIS, attorneys for plaintiffs in error, contended that where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid for its enforcement. And if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be in fact a new contract, it is thereby equally tainted. Nash v. Monheimer, 20 Ill. 215; Armstrong v. Taylor, 11 Wheat. 258.

A contract executed in consideration of a previous illegal one, or in compromise of differences growing out of it, is, like that whereon it rests, illegal and incapable of being enforced. Bishop on Contracts, Sec. 488; Cate v. Blair, 6 Coldw. 639; Pierce v. Kibbee, 51 Vt. 559; King v. Winants, 71 N. C. 469; Everingham v. Meighan, 55 Wis. 354; Wilson v. Bozeman, 48 Ala. 71; Swigart v. The People, 154 Ill. 284.

The instrument sued upon is, upon its face, a contract giving to the defendant in error the option to sell, at a future time, the shares of stock therein mentioned; and therefore it comes directly within the prohibition of section 130 of the Criminal Code, which provides as follows: "Whoever con-

tracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity, stock of any railroad or other company, or gold, or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so, in relation to any commodities, shall be fined not less than $10, nor more than $1,000, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section, shall be considered gambling contracts, and shall be void."

That this contract was void, under the statute above quoted, is settled by the repeated decisions of our courts. Schneider et al. v. Turner, 27 Ill. App. 220; 130 Ill. 28; Tenney v. Foote, 95 Ill. 99; Corcoran v. Lehigh and Franklin Coal Co., 37 Ill. App. 577; 138 Ill. 390; Campion v. Smith, 46 Ill. App. 501; Kerting v. Hilton, 51 Ill. App. 437; Osgood v. Bauder, 75 Iowa 550; State v. Williams, 35 Mo. App. 41.

In section 130 of the Criminal Code, we find the enumeration of certain kinds of property that are entirely dissimilar in themselves, and are not of the same kind, and have nothing in common, either in themselves or in their use, except that they are bought and sold upon the market, and are frequently used as a means, or as the subject, of option deals and gambling contracts. The main object of the legislature was to prevent the dealing in privileges to buy or sell at a future time. The question before the legislature was to make a law which would effectually break up the pernicious practice of gambling, which had become so common. It is well known that all manner of practices and forms are resorted to in order to evade the common law rule concerning gambling contracts, and therefore the legislature deemed it expedient to strike at the root of the evil, and to make these contracts giving the privilege to buy or sell at some future time, void. Such being the object of the legislature, it is but right and proper for the courts, in construing that statute, to bring it into harmony with the object and purpose intended. As was well said by Shaw, C. J., in com-

monwealth v. Kimball, Pick. 370, "It is unquestionably a well settled rule of construction, applicable as well to penal statutes as to the others, that when the words are not precise and clear, such construction will be adopted as will appear most reasonable and best suited to accomplish the objects of the statute."

In People v. Lacombe, 99 N. Y. 43, it was said: "A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical construction it is not within its letter. It is the spirit and purpose of the statute which are to be regarded in its interpretation; and if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although said construction is contrary to the literal meaning of some provisions of the statute."

It may be said this statute is penal in its nature, therefore the rule that penal statutes should be construed strictly, must be applied. That rule is an old and well established one, but as is said by Swaine, J., in U. S. v. Hartwell, 6 Wall. 395, "We are not unmindful that penal laws are to be construed strictly. But whenever invoked it comes attended with qualifications and other rules no less important. It is by the light which each contributes that the judgment of the court is to be made up. The object in construing penal, as well as other statutes, is to ascertain the legislative intent. That constitutes the law. If the language be clear, it is conclusive. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the legislature intended to embrace; but that intention must be gathered from the words, and they must be such as to leave no room for a reasonable doubt upon the subject. It must not be defeated by a forced and overstrict construction. The rule does not exclude the application of common sense to the terms made use of in the act, in order to avoid an absurdity, which the legislature ought not to be presumed to have intended.

When the words are general and include various classes of persons, there is no authority which would justify a court in restricting them to one class and excluding others, where the purpose of the statute is alike applicable to all. The proper course in all cases is to adopt that sense of the words which best harmonizes with the context and promotes, in the fullest manner, the policy and objects of the legislature."

In Pearce v. Foote, 113 Ill. 228, the court, construing this identical statute, say (page 239): "Although the statutes being considered are highly penal, there is no warrant for construing them with any unreasonable strictness. They ought rather to have a just, if not liberal, construction, to the end the legislative intention may be accomplished—to prohibit all dealings in options in grains or other commodities. It is only against unlawful 'gambling contracts' the penalties of the law are denounced, and no subtle *finesse* of construction ought to be adopted to defeat the end it is to be hoped may be ultimately accomplished."

The courts of this State have had occasion to construe this section of the statute in a number of cases, and have always applied to it the construction that it was intended to prevent gambling or option contracts as to every species of property; not only grain, stocks and gold, but various other kinds of property, not mentioned specifically in the section in question.

If it be correct to interpret the word "commodity," as used in the statute, as signifying only that class or kind of property that is similar in its nature to "grain," because it succeeds or follows after the word "grain," then these different decisions of our courts are erroneous, because coal is not a similar article of property; a lithographic plant surely is not similar; furniture and carpets do not bear much resemblance to grain; and yet all of these articles were held, in the cases above cited, to come under the ban of this statute.

The word "commodity," as used in the statute, is intended to cover all kinds of personal property, and it does not require any strained construction or definition of the word to make it do so. The definition given to the word by Webster

is: "That which affords ease, convenience or advantage, especially in commerce, including everything movable that is bought or sold, goods, wares, merchandise, produce of lands and manufacturers," etc.

It was held that "property," in its broadest and most comprehensive sense, includes all rights and interests in real or personal property; and also in easements, franchises and incorporeal hereditaments. Met. City Ry. Co. v. Chi. W. D. Ry. Co., 87 Ill. 318.

The meaning of the words "perishable property" has been gradually enlarged, so as to include securities of a wasting nature, or any form of investment of an uncertain kind, or attended with risk. Buckingham v. Morrison, 136 Ill. 437.

The word "property" embraces money, debts and choses in action of every kind, as well as things that are visible or tangible. Stahl v. Webster, 11 Ill. 511.

"Property" is held to include a person's business and the loss resulting from its interruption, under N. Y. Pen. Code, Secs. 552 and 553, defining "extortion" as the procuring of another's property by means of fear induced by threats to injure his "property." People v. Barondess, 31 N. E. Rep. 240.

The word "money" includes any instruments or tokens in general use in the commercial world as representatives of value; whatever is lawful and actually current as the equivalent of legal tender, coin and currency. State v. McFetridge, 84 Wis. 473.

Ashcraft, Gordon & Cox, attorneys for defendant in error, contended that the contract sued on is not illegal; citing Wolsey v. Neeley, 46 Ill. App. 387; Bishop on Contracts, Sec. 487; Corcoran v. Lehigh & Franklin Coal Co., 138 Ill. 390; Osgood v. Bander, 75 Ia. 550; 2 Parsons on Contracts, 517; Reg. v. Edmundson, 28 L. J. M. C. 215; Gunnestad v. Price, L. R. 10 Ex. 69; Washer v. Elliott, L. R. 1 C. P. Div. 174; Foster v. Blount, 18 Ala. 687; Sutherland, Stat. Construction, Sec. 268.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

The construction of the contract out of which the controversy in this case arose, was passed upon by this court in Wolsey et al. v. Neeley, 46 Ill. App. 387, and there determined to be an agreement by plaintiffs in error to pay to the defendant in error fifteen per cent per annum upon the par value of sixty-five shares of stock of the Abbott Buggy Co., for the dividends upon such stock, whatever that might be. That contract is as follows :

" Contract and agreement entered into this 14th day of April, 1887, between C. H. Bunker and C. S. Wolsey, parties of the first part, and C. H. Neeley of the second part, all of the city of Chicago, county of Cook and State of Illinois.

Whereas, the parties of the first part have this day sold and delivered to the party of the second part a certain sixty-five (65) shares of stock of the Abbott Buggy Co., a corporation doing business in the city of Chicago, State of Illinois, the par value of said stock being one hundred ($100) dollars each share.

Now, witnesseth, for and in consideration of one dollar in hand paid, the receipt whereof is hereby acknowledged, and such purchase of said stock by said C. H. Neeley, the said C. H. Bunker and C. S. Wolsey, parties of the first part, together or individually, agree to pay to said C. H. Neeley fifteen per cent interest per annum on the sum of sixty-five hundred ($6,500) dollars, said interest to commence from the first day of November, A. D. 1887; and payable annually, said agreement to continue for three years.

It is understood and agreed by all parties to this contract that any and all dividends that may be declared during the three years above stated by the Abbott Buggy Company on said stock purchased by said C. H. Neeley, shall go to said C. H. Bunker and C. S. Wolsey, parties of the first part.

It is further agreed and understood by all the parties to this contract, namely, C. H. Bunker and C. S. Wolsey, parties of the first part, and C. H. Neeley, of the second part, that, at the expiration of said term, namely, three (3) years

from November first, A. D. 1887, the said C. H. Neeley shall resign this agreement and shall retain the said sixty-five shares of stock if he so elect, or the said C. H. Bunker and C. S. Wolsey, parties of the first part, agree to purchase the said sixty-five (65) shares of stock at par value of one hundred ($100) dollars per share, if the said C. H. Neeley shall so elect.

In witness whereof, we have hereunto set our hands and seals the 14th day of April, A. D. 1887.

(Signed)   C. H. BUNKER,<br>CHAS. S. WOLSEY."

It now appears that after the making of said contract, the said stock issued to the plaintiff below under the aforementioned contract was surrendered and canceled, and bonds of the Abbott & Staver Mfg. Co., to the amount of $6,500, were given the plaintiffs below in place of the said stock, the following agreement, then made, being indorsed on the back of the said contract:

"CHICAGO, Oct. 1, 1890.

The signing by C. H. Neeley of the agreement to exchange $6,500 A. B. Co. stock for seven per cent debenture bonds of the Abbott & Staver Mfg. Co. is at the request of C. H. Bunker and C. S. Wolsey, and in no wise alters, affects or changes the agreement and mutual obligations of the parties to this agreement, and in consideration thereof we agree to accept bonds instead of the stock named therein.

C. H. BUNKER,<br>CHAS. S. WOLSEY."

Thereafter the following correspondence was had:

" SEPTEMBER 8, 1890.

FRIENDS, BUNKER AND WOLSEY:   On November 1, 1890, our contract expires.   Although the stock is worth more than par, I believe I will let you have it, as I can use the money to good advantage.   Please acknowledge receipt of this and oblige,

Yours truly,

C. H. NEELEY."

"CHICAGO, September 9, 1890.

C. H. Neeley, Esq., City.

DEAR SIR : Yours of September 8th, giving us notice of your desire to avail yourself of your option in our contract with you, is received and noted.

Yours truly,

C. H. BUNKER."

The following admissions were made upon the trial :

MR. ASHCRAFT: Will it be admitted that under this agreement the Abbott Buggy Company and the Staver Buggy Company were consolidated as the Staver & Abbott Buggy Company ?

MR. LOOMIS: Yes.

MR. ASHCRAFT: And these debenture bonds issued in pursuance of that consolidation ?

MR. LOOMIS: Yes.

It is admitted that the defendant paid to the plaintiff, under this contract, on December 10, 1888, the sum of $487.50; on November 30, 1889, $975; on July 19, 1890, $115.56; on August 14, 1890, $402.22; amounting in all to the sum of $1,980.22, $30.22 of which amount was for interest on deferred payments. The plaintiff claims that he is entitled to have the $975 unpaid of the fifteen per cent guaranteed, and six per cent on the amount of the contract, plus the amount due on guaranteed dividends on November 1, 1896. Interest on November 1, 1890, $6,500, the face of the debenture bonds, and $975 guaranteed dividends for one year. It will be admitted, I presume also, that on or about November 1, 1890, the plaintiff tendered these debenture bonds, and demanded the face of them.

MR. LOOMIS: Which we respectfully declined.

MR. ASHCRAFT: Yes, which they declined to pay.

And thereupon the plaintiff rested his case.

The court found for the plaintiff below, assessing his damages at $9,354.60. To reverse which the defendants below sued out a writ of error.

The contract of April 14, 1887, in so far as it gave to C. H. Neeley an option to sell the said stock, was a gambling

contract and void. Sec. 130 Criminal Code of Illinois; Schneider v. Turner, 130 Ill. 28; 27 Ill. App. 220; Tenney v. Foote, 95 Ill. 99; Corcoran v. Lehigh & Franklin Coal Co., 37 Ill. App. 577; 138 Ill. 390; Locke v. Towler, 41 Ill. App. 66; Peterson v. Cumen, No. 222, October term, 1895, Ill. App.

That portion of the contract as to which there was no option, the agreement to pay fifteen per cent per annum for the dividends, was valid. Plaintiff below was entitled to recover the amount of said fifteen per cent he had failed to pay, viz., $975, which sum, with interest at five per cent per annum, he should have recovered.

The judgment of the Superior Court is reversed save as to the sum of $975, with interest thereon at five per cent per annum from November 1, 1890, for which amount it is affirmed.

Appellant will recover costs in this court. Reversed in part and affirmed in part.