## Henry E. C. Peterson v. Charles J. Currier.

1. GAMBLING CONTRACTS—*What Are, etc.*—A contract by which an option to buy or sell any commodity is reserved, is a gambling contract.

2. COMMODITY—*The Term Defined.*—The term commodity includes everything movable which is bought and sold, the subject of trade and acquisition.

3. SAME—*Bonds of a Coal Company Are.*—The bonds issued by the Chicago and Iowa Coal Company, a corporation, running ten years at seven per cent semi-annual interest, are commodities within the meaning of section 130 of the Criminal Code, providing, that whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity, stock of any railroad or other company, or gold, or forestalls the market, etc., shall be fined, etc., and all contracts made in violation of this section shall be considered gambling contracts, and shall be void.

4. CONSTRUCTION OF STATUTES—*Statute Concerning, Applies to the Criminal Code.*—Section 1, chapter 131, R. S., entitled "Statutes," providing that in the construction of all general statutes, provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be carried out, unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the same statute, applies to the Criminal Code.

**Assumpsit,** for moneys, etc. Appeal from the Circuit Court of Cook County; the Hon. FRANCIS ADAMS, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed January 22, 1896.

## STATEMENT OF THE CASE.

On the 5th day of September, 1889, Charles L. Currier, appellee, entered into the following contract with Henry E. C. Peterson, appellant:

"CHICAGO, September 5, 1889.

Received of H. E. C. Peterson the sum of $5,000, to be invested in bonds issued by the Chicago and Iowa Coal Company at par, said bonds being a series of sixty, of the amount of $500 each, and are secured by a mortgage on all of the property of said company, being first lien, and valued at $200,000, which bonds I agree to purchase of said Peterson, on thirty days notice, at par, with accumulated or accrued interest unpaid, if any.

Said bonds run ten years with seven per cent semi-annual interest, to pay which a sinking fund of eight cents per ton is to be paid to the trustee (the Illinois Trust and Savings Bank of Chicago). Said bonds date September 1, 1889.

CHARLES L. CURRIER."

On the 20th day of November, 1891, appellant served on appellee the following notice:

"To Charles L. Currier:

DEAR SIR: Whereas, on the 5th day of September, A. D. 1889, I handed to you the sum of five thousand dollars ($5,000) to be by you temporarily invested in the bonds of the Chicago and Iowa Coal Company, and you afterward handed me an equal amount of said bonds, to wit, bonds of the par value of $5,000, the same being ten in number of the par value of $500 each.

And, whereas, you then and there executed to me a written agreement setting forth the terms upon which said temporary investment was to be made, which said agreement in writing is in the words and figures following:

'CHICAGO, ILL., September, 1889.

Received of H. E. C. Peterson the sum of five thousand dollars, to be invested in bonds issued by the Chicago and Iowa Coal Company at par, said bonds being a series of sixty of the amount of five hundred dollars each, and are

secured by a mortgage on all the property of said company, being first lien and valued at two hundred thousand dollars ($200,000), which bonds I agree to purchase of said Peterson on thirty days notice at par, with all accumulated or accrued interest unpaid, if any.

'Said bonds run ten years at seven per cent semi-annual interest, to pay which a sinking fund of eight cents per ton is to be paid to the trustee (the Illinois Trust and Savings Bank of Chicago). Said bonds date September 1, 1889.'

Charles L. Currier.'

And, whereas, I have heretofore repeatedly requested you to carry out the terms of said agreement and receive said bonds and return to me said sum of five thousand dollars ($5,000) with such interest as might have matured thereon under said agreement.

And, whereas, you have hitherto wholly refused, declined and neglected, and still do refuse, decline and neglect to carry out said agreement and return said money and receive said bonds.

I therefore hereby notify you in writing, this 20th day of November, A. D. 1891, to return said money and receive said bonds, which said bonds I herewith tender to you, with which notice you will please comply within thirty days from this date.

Dated Chicago, November 9, 1891.

H. E. C. Peterson."

On the 5th day of February, 1892, appellant brought his action in assumpsit to recover back said money.

Childs & Hudson, attorneys for appellant, contended the bonds mentioned in the contract are certainly not " grain," they are certainly not " stock of any railroad or other company," they are certainly not " gold." It is axiomatic that bonds are neither grain, stock nor gold. There remains, then, only the term " commodities."

This term, " commodity," is not a technical term. It has no special trade meaning. It is not a term of science or learning. It is not a legal term. There is no expert who

could enlighten us as to its meaning, except the lexicographer. It is a common word, in ordinary daily use, with no particular or hidden meaning, and we must go to the English dictionaries to learn its meaning.

Worcester, the lexicographer, thought by many to be the foremost authority upon the use and meaning of words in the English language, defines the word "commodity" as "merchandise," "goods," "wares," "produce," and in a note explaining the synonyms given in the definition, he says, "Commodity is a term applied to articles of the first necessity or importance of the products of a country; goods are the articles of the tradesman; merchandise is what belongs to merchants, and is the object of commerce; wares are manufactures, and may be goods or merchandise. The staple commodities of a country; a tradesman's or shopkeeper's goods; the merchant's merchandise; the manufacturer's wares."

Commodity, then, means merchandise. It includes grain. It also includes flour, lumber, potatoes, probably fruits, groceries, manufactured goods, as cotton cloth, woolen goods, hardware, probably tools, machines, also meats, possibly cattle on the hoof, or even horses and mules. It might even be stretched to include works of art, pictures, photographs, statuary, etc. But it could not possibly be made to include a promissory note, a bill of exchange, a chose in action, negotiable or non-negotiable, nor real estate. Neither the bond mentioned in the contract nor the real estate securing the same is a commodity. Paper by the ream may be a commodity, but the contract written upon a sheet of paper is not an article of merchandise, and if neither a promise to pay nor the real estate securing that promise are commodities, certainly the two together can not constitute a commodity.

The only contracts which have been held void under this statute, as reported in the books, relate strictly to grain, stocks, gold, or articles of common merchandise, i. e., articles of personal property, and in no instance has any contract for sale of a promissory note of an individual or of a

corporation, under seal or not under seal, secured by real estate mortgage or unsecured, been held void under this statute.

In Pickering v. Cease, 79 Ill. 328, the option was one calling for grain.

In Tenney v. Foote, 95 Ill. 99, the dealing was in options in oats. Furthermore, the settlements were to be made by payments of " differences."

In Pierre v. Foote, 113 Ill. 228, the gambling was on the Board of Trade, in grain, to be settled by the payment of " differences," as in the last case mentioned.

In Cothran v. Ellis, 125 Ill. 496, the gambling was on the Board of Trade, in grain and provisions, and was to be settled by the payment of " differences " and not by delivery of the goods.

In Schneider v. Turner, 130 Ill. 28, the option was for the purchase of railroad stocks.

In Pope v. Hanks, 155 Ill. 617, the option objected to was for the purchase of wheat and corn.

In all of the following cases, found in the Appellate Court reports, the transaction was one in grain or provisions : Tenney v. Foot, 4 Ill. App. 594; Webster v. Sturges, 7 Ill. App. 560; Beveridge v. Hewitt, 8 Ill. App. 467; Colderwood v. McCrea, 11 Ill. App. 543; Coffman v. Young, 20 Ill. App. 76; Miller v. Bensley et al., 20 Ill. App. 528; Kennedy v. Stout, 26 Ill. App. 133; Miles v. Andrews, 40 Ill. App. 155; Watte v. Costello, 40 Ill. App. 307; Griswold v. Gregg, 24 Ill. App. 384; Carrol v. Holmes, 24 Ill. App. 452; N. Y. & C. G. & S. Exch. v. Mellen, 27 Ill. App. 556; Wheeler v. McDermid, 38 Ill. App. 179; Woolcott v. Reeme, 44 Ill. App. 196.

No possible interpretation of the statute can be made to include notes or bonds. We say " interpretation," and not " construction," for the reason that there is no occasion for any "construction." Construction is resorted to only when, on comparing two different writings of the same individual, or two different enactments of the same legislature, there is found contradiction where there was evidently no intention

of such contradiction, one of the other. But here we have one simple statute to be interpreted, and the first and most elementary rule of interpretation is that it is to be assumed that words and phrases are used in their popular or common acceptation, unless the subject-matter indicates that they are used in a technical sense. 23 Am. & Eng. Cyc. Law, 298.

" Where the object of the legislature is plain and the words of the act unequivocal, courts ought to adopt such construction as will best effectuate the intention of the legislature, but they must not, even in order to give effect to what they may suppose to be the intention of the legislature, put upon the provisions of a statute a construction (interpretation) not supported by the words, even though the consequences should be to defeat the object of the act. The fittest course in all cases where the intention of the legislature is in question is to adhere to the words of the statute, construing (interpreting) them according to their nature and import, in the order in which they stand in the act, rather than to enter upon an inquiry as to the supposed intention." Frye v. C., B. & Q. R. R., 73 Ill. 399; Martin v. Swift, 120 Ill. 488; Beardstown v. Virginia, 76 Ill. 34.

Prior to this statute it was lawful to contract to have or give an option to sell or buy, at a future time, even grain and other commodities, and such contracts were neither void nor voidable at the common law. Schneider v. Turner, 130 Ill. 39.

The statute which takes away the rights of the parties as they would have been at common law, and renders their contract void, being in derogation of the common law, should be strictly construed, and should not be extended to bonds unless bonds are mentioned in the act. Sutherland on Statutory Construction, Secs. 362, 400; Thompson v. Wheeler, 85 Ill. 197; Cadwallader v. Harris, 76 Ill. 372; Canadian Bank v. McCrea, 106 Ill. 289.

There can be no departure from the plain meaning of a statute on grounds of its unwisdom or of public policy. The courts are interpreters, not makers, of the law. 23 Am. & Eng. Ency. 299; St. P., M. & M. R. R. v. Phelps, 137 U. S. 528.

This section is also highly penal in its nature, and will be strictly construed. Sutherland on Statutory Construction, Sec. 349; Hankins v. The People, 106 Ill. 106.

L. S. Hodges, attorney for appellee, contended that the contract is within the provisions of section 130 of the Criminal Code, as that section is applied to a like contract in Schneider v. Turner, 130 Ill. 28.

The rule to be observed in the construction of this statute is stated in Starr & C. Statutes, Chap. 31, Sec. 1.

This statute has been interpreted by the Supreme Court in Hankins v. The People, 106 Ill. 628; Richmond v. Moore, 107 Ill. 429.

In Reid's Dictionary, "commodity" is defined as "anything bought and sold." I have found no dictionary which does not in effect give it a like meaning, and it is believed that in the ordinary use of the word that meaning has always attached to it. Shakespeare says: "I would God, thou and I knew where a commodity of good names could be bought." Henry IV, Pt. 1, Act. 1, Sc. 2.

Mr. Justice Waterman delivered the opinion of the Court.

Under the holdings of this and the Supreme Court, that a contract whereby an option to buy or sell any commodity is reserved is a gambling contract (Schneider v. Turner, 27 Ill. App. 220; Schneider v. Turner, 130 Ill. 28; Corcoran v. Lehigh & Franklin Coal Co., 37 Ill. App. 577; Wolsey et al. v. Neeley, 62 Ill. App. 141), the only question here presented is, whether bonds are a commodity.

Commodity, according to Webster's Dictionary, includes everything movable which is bought and sold, except animals. According to the Century Dictionary, it is anything movable that is a subject to trade or acquisition.

An equally extensive meaning is given to the word in Portland Bank v. Apthorp, 12 Mass. 252.

The statute of this State, Sec. 1, Chap. 131, directs that in the construction of "all general statutes, provisions,

terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be carried out," "unless such construction would be inconsistent with the manifest intent of the legislature, or repugnant to the context of the same statute."

This statute has been held to apply to the criminal code. Hawkins v. The People, 106 Ill. 628; Richmond v. Moore, 107 Ill. 429.

We are therefore of the opinion that bonds are a commodity, within the meaning of Sec. 130 of the Criminal Code of this State, and that the contract in question was invalid.

The judgment of the Circuit Court is affirmed.