## John C. McKeon, Receiver, etc., et al., v. Harris Wolf.

77  325
178s  85

77  325
f97  ³160

1. COMMODITY—*The Term Defined.*—The primary meaning of the word commodity, according to the lexicographers, is convenience, and its secondary meaning is that which affords convenience or advantage, especially in commerce, including everything movable which is bought and sold.

2. SAME—*Bonds Are, etc.*—The bonds of the Chicago Auditorium Association are a commodity within the meaning of Sec. 130 of the Criminal Code of this State, etc. The word commodity in ordinary interpretation, includes marketable bonds.

3. STATUTES—*Rule of Construction.*—In the construction of statutes where general words follow an enumeration of particular cases, such general words are held to apply to cases of the same kind as those which are expressly mentioned, and are not allowed a broader or more general interpretation.

4. SAME—*Exception to the Rule.*—" But this rule does not apply when the particular precedent words exhaust a whole *genus;* in which case the general term is held to refer to a larger class."

5. GAMBLING CONTRACTS—*Construction of Sec. 130 of the Criminal Code.*—The intent of the legislature in enacting Sec. 130 of the Criminal Code was, not merely to protect grain, stocks and gold against dealings of a certain kind, but to prevent a known evil, viz., dealing in options, as well in other things as in grain, stocks and gold.

6. SAME—*Optional Sale of Bonds.*—An agreement by the seller of certain bonds to buy them back at a future time and at the same price

should the purchaser desire to sell them, is an optional contract, and by force of Sec. 130 of the Criminal Code is void. (Hurd's Statutes 1898, p. 571.)

**Assumpsit.**—Common counts. Trial in the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Finding and judgment for plaintiff. Error by defendant. Heard in this court at the March term, 1898. Reversed. Opinion filed June 29, 1898.

### STATEMENT.

Plaintiff in error, the National Bank of Illinois, at Chicago, sold to defendant in error certain bonds, known as the bonds of the Chicago Auditorium Association, and at the time of the several sales, entered into the following agreements and undertakings with defendant in error:

"CHICAGO, June 22, 1896.

H. WOLF, Esq., City.

DEAR SIR: We have this day sold to you eleven thousand dollars of the five per cent bonds of the Chicago Auditorium Association at par and interest.

Should you desire to resell these to us during the month of January, 1897, we will buy them back from you at the same price.          Yours truly,

(Signed)          WM. A. HAMMOND,
                    Second Vice-Prest."

On July 9, 1896, in connection with the sale of others of the bonds:

"Should you wish to sell these bonds back to us in the month of January, 1897, we will buy them back at par and interest.

W. A. HAMMOND,
Second Vice-Prest."

On July 14, 1896, referring to sale of others of the bonds:

"Should you wish to sell us these bonds back during the month of January, 1897, we will purchase them at par and interest.

(Signed)          W. A. HAMMOND."

And on July 15, 1896, referring to another of the sales:

"If you wish to sell these bonds back to us at par and

McKeon v. Wolf.

interest during the month of Janaury, 1897, we will repurchase them from you at the above price.

(Signed)         W. A. HAMMOND,

Second Vice-Prest."

Plaintiff in error McKeon was appointed receiver of the bank on December 21, 1896.   On January 16, 1897, defendant in error gave the following notice to the receiver:

" CHICAGO, ILLINOIS, Jan. 16, 1897.

HON. JOHN C. McKEON, Receiver National Bank of Illinois.

I hereby tender you thirty-five bonds of the Chicago Auditorium Association, of one thousand dollars each, making a total of thirty-five thousand dollars, and I hereby offer to sell said bonds to you, as said receiver, at their face value with accrued interest.

This tender and this offer to sell are made in pursuance of certain receipts and guarantees given me by said National Bank of Illinois, at the time I purchased said bonds from said bank.

Copies of said receipts and said guarantees are attached hereto and made a part hereof, and your attention is specifically called thereto.

You are further notified that if said bonds are not repurchased by you in pursuance of above demand, I shall at once place them upon the open market, offering them for sale, and shall hold said bank and you, as receiver thereof, liable for any loss incurred by me growing out of said sale, or I shall have said bonds appraised and their present market value fixed, and hold you, as receiver of said bank, and said bank liable for any difference between the face value and said appraised value.

(Signed)         H. WOLF."

The receiver refused to accept the bonds or to recognize any obligation by reason of the agreements to repurchase.

This suit was brought to recover damages for breach of these several agreements by the bank to repurchase the bonds at the option of defendant in error.   A jury was waived, and the cause was submitted to the trial court upon an agreed statement of facts.   Among other items in the agreed statement is the following:

" 13. *   *   * That said Auditorium bonds were not speculative bonds, but were and are in the banking community of Chicago recognized as good and valid staple securities, either for a loan of money or for the purchase and sale thereof," etc.

" 14. It is agreed that in the making of this stipulation, by the parties hereto, the power of the National Bank of Illinois, and that of William A. Hammond, its second vice-president, to enter into said contracts in its behalf, is affirmed on the part of the plaintiff herein, and is disputed on the part of the defendants herein, and the judgment of the court is requested on the stipulated facts."

The trial court found the issues for defendant in error and against plaintiff in error, the National Bank of Illinois, but in favor of plaintiff in error, the receiver, and assessed damages at $35,257.61, and entered judgment for that amount against the bank. To reverse that judgment this writ of error is prosecuted.

GEORGE M. ECKELS, attorney for plaintiffs in error.

Either Wolf, by contract and for a valuable consideration, reserved to himself an option to sell to the National Bank of Illinois, at Chicago, during the month of January, 1897, $35,000 worth of bonds of the Auditorium Association, in which case the contracts would be void, as in violation of section 130 of the criminal act of Illinois, making all contracts for options for the sale of commodities void—Sec. 130 Criminal Code Ill. (2d Edn. Starr & Curtis, 253); Schneider v. Turner, 130 Ill. 28; S. C., 27 Ill. App. 220; Locke v. Towler, 41 Ill. App. 66; Corcoran v. Lehigh & Franklin Coal Co., 37 Ill. App. 577; S. C., 138 Ill. 398; Kerting v. Hilton, 51 Ill. App. 437; Campion v. Smith, 46 Ill. App. 501; Peterson v. Currier, 62 Ill. App. 163; S. C., 163 Ill. 528; Wolsey v. Neeley, 62 Ill. App. 141; State v. Williams, 2 Strob. 474; Sec. 88 Criminal Code Ill., Starr & Curtis, 2d Ed.; Constitution Ill., Art. 13; Railroad and Warehouse Act Ill., Sec. 177 (Starr & Curtis 2d Ed.); Sutherland on Stat. Constr., Secs. 278, 279; Am. & Eng. Ency. Law, 23,

443; Ellis v. Murray, 28 Miss. 142; Foster v. Blount, 18 Ala. 687; State v. Holman, 3 McCord, 306; Woodworth v. State, 26 Ohio St. 196; Webber v. City, 148 Ill. 319; Eubanks v. State, 5 Mo. 450; Shropshire v. Glasscock, 4 Mo. 536— or the memoranda were mere offers made without consideration, whereby the bank offered to buy during the month of January, 1897, said bonds, in which case, the bank having been placed in the hands of a receiver, and the receiver having repudiated the offers upon his appointment and prior to his acceptance, the offer was of no binding force or effect. Sec. 228 Rev. Stats. U. S.; White v. Knox, 111 U. S. 784; Pomeroy, Spec. Perf., Sec. 60; School Directors v. Trefethren, 10 Ill. App. 127.

It is a well known principle of insolvency law that an assignee or receiver has a right to elect whether he will adopt or reject an executory contract of the debtor, and that he has a reasonable time within which to make his election, providing a right of action had not accrued prior to the assignment, or the appointment of a receiver. U. S. Trust Co. v. Wabash W. Ry., 150 U. S. 287; Sec. 328 Anderson's Beach on Receivers; Quincy Ry. Co. v. Humphreys, 145 U. S. 82.

It is also a well known principle of insolvency law that a claim for damages under a right which was not in existence at the time of the assignment can not be proved against the assigned fund. Fidelity Safe Dep. & Tr. Co. v. Armstrong, 35 Fed. 567; Riggin v. Magwire, 15 Wall. 549; French v. Morse, 2 Gray, 111.

MOSES, ROSENTHAL & KENNEDY, attorneys for defendant in error, contended that bonds of incorporated companies, like the Chicago Auditorium Association, are not within the mischief of the Criminal Code, and they are certainly not within its letter. Section 130 of the Criminal Code (being the one in question) reads as follows :

" Whoever contracts to have or give to himself, or another, the option to sell or buy at a future time any grain or other commodity, stock of any railroad or other company, or gold,

\*   \*   \*   shall be fined not less than ten dollars nor more than one thousand dollars, or confined in the county jail not exceeding one year, or both, and all contracts made in violation of this section shall be considered gambling contracts and shall be void."

In considering this statute we must not forget that we are dealing with a criminal and highly penal statute, which will be strictly construed, and is not subject to enlargement or loose construction.

It is true that this statute first received interpretation by the Supreme Court in Schneider v. Turner, 130 Ill. 28, which case is printed at length in the opposing brief.

The contract in the Schneider case, however, was held to be a pure option, a dealing with the stock of the North Chicago City Railway, which was one of the specially enumerated things mentioned in the statute as "stock of any railroad or other company." The opposing brief does not attempt to discuss whether or not the bonds of an incorporated company, bearing interest payable semi-annually, and which are denominated "a good, valid and staple security" in the stipulation, are within the mischief of the statute.

A highly penal statute in derogation of the common law must be strictly construed, and can not be held to extend to bonds of corporations like that of the Auditorium Association, unless bonds were in fact mentioned in the act. If the words "or other commodity" would follow the words "stock of any railroad or other company, or gold," then there might be an apparent warrant for an argument that bonds might be included, and even in that case it would leave it doubtful whether it would not simply include bonds of railroad companies, which sometimes are traded in the stock exchange; but in this case we are dealing with the bonds of a local private corporation owning a building for hotel and exhibition purposes. Sutherland on Statutory Construction, Sec. 349; Hankins v. The People, 106 Ill. 628; Thompson v. Weller, 85 Ill. 197; Cadwallader v. Harris, 76 Ill. 372; Canadian Bank v. McCrea, 106 Ill. 289.

It has been said, and properly, that the fittest course in all cases where the intention of the legislature is in question, as at bar, is to adhere to the words of the statute, construing them according to their nature and import, in the order in which they stand in the act, rather than to enter upon an inquiry as to the supposed intention of that body.   Frye v. C., B. & Q. R. R., 73 Ill. 399;  Beardstown v. Virginia, 76 Ill. 34.

The word "commodity," standing by itself, may, and likely does, mean "merchandise;" but when connected with grain, it must mean the products of the earth when severed and put in manufacture.   It will likely include flour, barley, oats, potatoes, fruits, groceries, manufactured goods, and possibly meats, etc.; but it never was used to include a promissory note, bill of exchange, chose in action, mortgage, trust deed, or real estate.   The broad definition found by Judge Waterman in Webster's and the Century Dictionaries is not applicable to the case under consideration.

In Citizens Bank v. Steamboat Co., 2 Story, 16, 5 Fed. Cases, pp. 719, 731–732, Judge Story said:

"A bond, an annuity, a legacy, a debt due on account, may be bought and sold; but no one would assert any of these things to be merchandise.  *  *  *  The term 'merchandise' is usually applied to specific articles, having a sensible, intrinsic value, bulk, weight, or measure in themselves; and not merely evidences of value, such as notes, bills of exchange, checks, policies of insurance and bills of lading.  *  *  *  The term 'merchandise' is never applied to choses in action."

Mr. Justice Sears delivered the opinion of the court.

Plaintiffs in error contend that the agreements upon which the recovery here is founded are within the application of Section 130, Chapter 38 of the Revised Statutes, and hence are void.

Defendant in error contends, first, that the objection to a recovery upon this ground was not contemplated in the submission of issues to the trial court upon the agreed

statement of facts, and hence can not be urged here; and, secondly, that the agreements are not in violation of the statute invoked.

We are of opinion that the stipulation of submission is broad enough to permit plaintiffs in error to avail of any defense which may arise from the provisions of the statute. Item fourteen of the agreed statement of facts provides: " The power of the National Bank of Illinois, and that of William A. Hammond, its second vice-president, to enter into said contracts in its behalf, is affirmed on the part of the plaintiff herein and is disputed on the part of the defendants herein," etc. It is difficult to perceive why that " power" of this corporation to enter into the contracts in question may not as well be disputed upon the ground that the contracts are declared gambling contracts within the inhibition of the Criminal Code, as upon any other ground.

It is apparent from the record that the plaintiffs in error relied upon this contention in the court below. The following, among other propositions of law, was tendered by them to the trial court :

" 1. The contracts sued on are gambling contracts within the meaning of the Criminal Statute of the State of Illinois, commonly known as Section 130 of the Criminal Code, and are void."

It was clearly upon the stipulated facts that the judgment of the court was sought. We proceed, then, to consider the question, the determination of which is decisive of the cause, viz.: Whether the agreements sued upon are such as to come within the prohibition of the statute.

That the writings here constitute merely an option, as contemplated by the word " option " in the statute, can hardly be questioned. Schneider v. Turner, 130 Ill. 28.

In this case Mr. Justice Wilkin, delivering the opinion of the court, said : " It is insisted that by the prohibition of the statute, the legislature only intended to make unlawful such option contracts as contemplate a settlement by differences; that to come within the inhibition of section 130, the contract must be a gambling contract.  *  *  *  The

McKeon v. Wolf.

first question which suggests itself in considering the construction of this statute contended for by appellants is, if their construction is the true one, why was the statute enacted at all? Nothing is more clearly and firmly established by the common law, than that all gambling contracts are void. It is equally well settled that all contracts for the purchase and sale of property, with the understanding or agreement of the parties (whether that agreement is expressed on the face of the contract, or exists by secret understanding) that the property is not to be delivered or accepted, but the contract satisfied by an adjustment of the differences between the contract and market prices, are mere wagers or gambling contracts, and void. * * * It must be presumed that the object of the legislature was to declare that unlawful which theretofore had been lawful. Prior to this act it was lawful to contract to have or give an option to sell or buy, at a future time, grain or other commodity. Such contracts were neither void nor voidable at common law. The statute makes this unlawful and void in Illinois."

Counsel urge that the bonds, which are here the subject-matter of the agreements, are not within the definition of those things as to which dealing in options is prohibited. In other words, it is argued that the expression " or other commodity," can not be interpreted to include bonds. And to sustain this contention the rule of *ejusdem generis* is invoked. We have, then, to determine, first, whether in its ordinary acceptation the word " commodity " would include marketable bonds; and, secondly, if so, whether such ordinary acceptation of the word is to be here limited by the application of the rule of construction known as *ejusdem generis*. The primary meaning of the word commodity, according to the lexicographers, is convenience, and its secondary meaning is " that which affords convenience or advantage, especially in commerce, including everything movable which is bought and sold."—Webster. "An article of trade or commerce, a movable article of value, something that is bought and sold."—Standard Dictionary.

" Commerce, privilege, profit, gain, property, goods, wares, merchandise."—Anderson's Law Dictionary. "Anything movable that is subject of trade or acquisition."—Century Dictionary.

Under a constitutional provision authorizing the legislature to impose duties and excises upon "any produce, goods, wares, merchandise and commodities whatsoever," the Supreme Court of Massachusetts held that the franchise of a corporation came within the definition of commodity, saying : " Commodity is a general term, and includes the privilege and convenience of transacting a particular business." Commonwealth v. Lancaster Sav. Bank, 123 Mass. 493.

The Supreme Court of the United States, commenting upon this provision of the Massachusetts constitution, said in relation to the word "commodities": " If regarded as meaning goods and wares only, there would be much difficulty in the case; but if it signifies ' convenience, privilege, profit and gains,' as uniformly held by the State court, then all difficulty vanishes and the case is clear." Hamilton Co. v. Massachusetts, 6 Wall. 632.

The court did not, however, pass upon the definition of the word, except to adopt the definition of the State court, and that merely because the State court had so decided.

This court has had occasion heretofore to pass upon the meaning of this word in the statute in question, and as applied to a like question, viz., its application to bonds. Peterson v. Currier, 62 Ill. App. 163.

In that case Mr. Justice Waterman, delivering the opinion of the court, said : " The statute of this State, Sec. 1, Chap. 131, directs that in the construction of all general statutes, provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be carried out, unless such construction would be inconsistent with the manifest intent of the legislature," etc., and concluded, " we are therefore of the opinion that bonds are a commodity within the meaning of Sec. 130 of the Criminal Code of this State," etc.

We are of opinion that the word commodity would, in ordinary interpretation, include marketable bonds.

It remains, therefore, to inquire whether such ordinary interpretation of the word is to be here limited by context and application of the rule *ejusdem generis.* The rule invoked is that in the construction of statutes where general words follow an enumeration of particular cases, such general words are held to apply to cases of the same kind as those which are expressly mentioned, and are not allowed a broader or more general interpretation. Potter's Dwarris, 247; Broom's Legal Maxims, 650–651; Sutherland on Statutory Construction, Sec. 270; In re Swigert, 119 Ill. 83; Wilson v. Board of Trustees, 133 Id. 443; Ambler v. Whipple, 139 Id. 311; Moore v. People, 146 Id. 600; Gillock v. People, 171 Id. 307; City of Cairo v. Coleman, 53 Ill. App. 680.

Sutherland announces the rule as follows : " The object of enumeration is to set forth, in detail, things which are in themselves so distinct that they can not conveniently be comprehended under one or more general terms; there is believed to be no *a priori* presumption that the things enumerated are all of them of the same kind. When a specific enumeration concludes with a general term, it is held to be limited to things of the same kind. It is restricted to the same *genus* as the things enumerated."

Looking to the reason as well as the letter of the rule, it seems clear that the occasion for its application arises only when the precedent word is descriptive of some particular object or objects belonging to a class or *genus.* It is only by the use of such a special word that the general words following can be limited to such other objects as belong to the same class or *genus* with the precedent special word. If the precedent word is itself generic, descriptive of a class or *genus*, and inclusive of all that belong to the class or *genus*, the general word following must either include something outside of that *genus* or class, or else mean nothing at all. In such case the rule of *ejusdem generis* does not apply.     23 Am. & Eng. Ency. 442; Sutherland on

Statutory Construction, Secs. 278–279; United States v. Fisher, 2 Cranch, 358; Foster v. Blount, 18 Ala. 687; State v. Holman, 3 McCord, 306; Woodworth v. The State, 26 Ohio St. 196; Eubanks v. The State, 5 Mo. 450; Ellis v. Murray, 28 Miss. 142; Webber v. City, 148 Ill. 319; Gillock v. People, 171 Id. 307.

It is announced in the Am. & Eng. Ency. as follows:

"Nor does it apply when the particular words exhaust a whole *genus;* in that case the general term is held to refer to a larger class."

And by Sutherland as follows:

"If the particular words exhaust a whole *genus*, the general words must be held to refer to some larger *genus*."

In Ellis v. Murray, *supra*, the court said: "* * * When all those of the inferior degree are embraced by the express words used and there are still general words used they must be applied to things of a higher degree than those enumerated; for otherwise there would be nothing for the general words to operate upon and effect could not be given to all of the words."

Nor is the rule *ejusdem generis* ever to be permitted to limit or control the intent of the legislature when that intent can be clearly ascertained. Sutherland says: "This rule can be used only as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention or of confining the operation of a statute within narrower limits than was intended by the lawmaker. It affords a mere suggestion to the judicial mind that where it clearly appears that the lawmaker was thinking of a particular class of persons or objects, his words of more general description may not have been intended to embrace any other than those within the class. The suggestion is one of common sense. Other rules of construction are equally potent, especially the primary rule which suggests that the intent of the legislature is to be found in the ordinary meaning of the words of the statute. * * * Hence, though a general term follows specific words, it will not be restricted by them when the object of the act and the inten-

McKeon v. Wolf.

tion is that the general word shall be understood in its ordinary sense."

In Webber v. City, *supra*, the Supreme Court had occasion to interpret an ordinance which specified : " Circuses, menageries, caravans, side shows and concerts, minstrel or musical entertainments given under a covering of canvass, exhibitions of monsters or of freaks of nature, variety and minstrel shows, athletic, ball or similar games of sport, and all other exhibitions, performances and entertainments not here enumerated, given in a building, hall or under canvass or other cover, or within any inclosure."

Holding that horse races were included in the general description, the court said :

" That the operation of this general and sweeping clause is not to be restricted by an application of the maxim *ejusdem generis* is, we think, very obvious.   To apply that maxim would defeat the wider intent already expressed, and would do violence to the language of the clause itself. The words used, if given their natural and obvious import, apply not to the other exhibitions, performances and entertainments of the same *genus* with those previously specified, but to all other exhibitions, performances and entertainments not there enumerated, given within any inclosure," etc.

In Gillock v. The People, *supra*, the statute to be construed was as follows:

" Whoever willfully  *  *  *  enters into any dwelling house, kitchen, office, shop, storehouse, warehouse, malthouse, stillinghouse, mill, pottery, factory, wharfboat, steamboat or other water craft, freight or passenger railroad car, church, meetinghouse, schoolhouse, or other building, with intent to commit murder, robbery, rape, mayhem or other felony or larceny, shall be deemed guilty of burglary." And the court said :   " To limit the meaning of the words ' other building,' as used in our statute, to buildings *ejusdem generis* with those specifically named, would be to render the general words practically meaningless.   What building not a dwellinghouse, legally speaking, is of the

same kind as a dwellinghouse? And so with each of the buildings mentioned. * * * The purpose of the legislature in passing the foregoing section of our statute was to radically change the common law as to the crime of burglary, and make those who burglariously enter other buildings than a mansion or dwellinghouse, guilty of that crime, and we think the intention to include buildings not *ejusdem generis* with those mentioned by name is clearly shown by the use of the words ' other building.' "

We think it clear that the intent of the legislature here was, not merely to protect grain, stocks and gold against dealings of a certain kind, but to prevent a known evil, viz., dealing in options as well in other things, as in grain, stocks and gold. In Pope v. Hanke, 155 Ill. 617, Mr. Justice Magruder, in delivering the opinion of the court, said : " We have held that dealing in futures or options is productive of mischievous results, and have characterized it as a ' dangerous evil ' and ' a vice that has in recent years grown to enormous proportions.' "

It is argued that the use of the words " stock of any railroad or other company, or gold," following the general term " other commodity," indicates that it was not the intent of the legislature to give the word " commodity " its ordinary and general meaning, as, it is argued, in that event the subsequent specific enumeration of stocks and gold would have been unnecessary and meaningless. Whatever may have been the motive of the legislature in referring specially to stocks and gold, whether through excessive caution lest stocks, when shown to be commercially valueless and not marketable, or gold, when in the form of money, might be held not to be commodities, or from mere unnecessary repetition by way of emphasis of two things which have been commonly used in dealing in differences, actual or fictitious, or from other motive, we are, in any event, not willing to hold that this subsequent special reference shall operate to make the general term " other commodity " absolutely meaningless.

If the rule were applied as contended for by counsel for,

appellant, it is difficult to perceive how the words " other commodity " could have any application whatever.   They could not, if restricted to things *ejusdem generis* with grain, include coal, as held in Corcoran v. Lehigh & F. Coal Co., 37 Ill. App. 577, affirmed in 138 Ill. 390.   Nor could they include lard or pork, as held in Pearce v. Foot, 113 Ill. 228. Nor a manufacturing plant, as held in Kerting v. Hilton, 51 Ill. App. 437.   Yet each of these things was held, in one of the several cases, to have been within the operation of this statute, and of necessity within the meaning of the term " other commodity."

While the Supreme Court has not had occasion to pass upon the precise question here presented, yet that court has evidently given the word in question its ordinary and generally accepted meaning.   In Schneider v. Turner, *supra*, the court said :   " It is the contract for such choice, right or privilege of selling or buying, at a future time, any commodity, the statute was intended to prohibit."

We are of opinion that marketable bonds are within the prohibition of the statute, and that the contracts here in question are, by force of the statute, void.

To the other contentions of plaintiffs in error, we can not assent.   It is, however, unnecessary to consider them in detail, as the determination reached disposes of the cause.

The judgment is reversed.

Mr. Justice WINDES dissents.